UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
JOSEPH J. RUSSO, JR.,                            **MEMORANDUM & ORDER**

                     Plaintiff,                          12-CV-0035 (ENV)

   -against-

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                    Defendant.
----------------------------------------------------------------x

VITALIANO, D.J.

      Plaintiff Joseph Russo seeks review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under the Social Security Act (the "Act"). The parties have filed cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Russo asks the Court to reverse the Commissioner's decision and remand for further proceedings, arguing that the Commissioner improperly discounted the opinion of Russo's treating physician and failed to consider the high dosages of pain medication prescribed to manage his condition. The Commissioner argues that he correctly applied the relevant legal standards and that his conclusion that Russo is not disabled within the meaning of

1

the Act is supported by substantial evidence.

On review, the Court finds error, and it is fundamental. The administrative record is not adequately developed. Accordingly, the Commissioner's motion is denied and Russo's cross-motion is granted to the extent that this matter is remanded to the Commissioner for further proceedings. The reasons follow.

## Background

I.  Procedural History

On October 2, 2009, Russo filed an application for disability insurance benefits due to damaged discs, lower back pain, leg pain, obesity, and depression, with a disability onset date of January 1, 1998. (R. at 117-25, 141.)[1] The Social Security Administration ("SSA") denied the application on April 29, 2010, finding that plaintiff retained the capacity to perform sedentary work. (R. at 83-90.) On March 8, 2011, a hearing was held before ALJ Jerome Hornblass. Russo, who was, and remains, represented by counsel, appeared and testified. (R. at 67-80.)

In an April 28, 2011 written decision, the ALJ denied Russo's claim, concluding that plaintiff was not disabled within the meaning of the Act from January 1, 1998 through the date of the decision. (R. at 26-35.) The decision of the ALJ became the final decision of the Commissioner on November 8, 2011, when the

---

[1] Citations to the underlying administrative record are designated as "R."

2

Appeals Counsel denied Russo's request for review. (R. at 1-6.) Russo timely filed this action on January 4, 2012 to challenge the Commissioner's adverse determination.

II.   Medical Evidence

Five medical professionals, including two treating physicians, one consulting physician, and two consulting psychologists opined on Russo's health history and status. No vocational specialists testified at Russo's hearing. The administrative file also contained the clinical notes of several doctors, including two pain management specialists. These specialists, Anne Marie Stilwell, M.D. and Sanjay Bakshi, M.D., or their associates, saw Russo, in total, at least 38 times between 2001 and 2009. The New York State Division of Disability Determinations (the "Division") solicited evidence and information from Dr. Stilwell, (R. 244, 322-29), whom Russo listed as his physician in his benefits application, (R. 143-44). In response, she provided only her clinical notes and did not render a separate formal medical opinion or RFC assessment. (R. 244-81.) Dr. Bakshi treated Russo from 2001 through 2005, but was not listed in Russo's application. (R. 143-44.) No information was solicited from him, (R. 322-29), and his clinical notes appear in the administrative file only because they were subsumed in the medical records provided by one of Russo's other treating physicians, (R. 330-349). Highlighted extractions from the medical evidence, including embedded data, follow.

A.   *Treating Physician—Dr. Seth Brum*

Seth Brum, M.D. appears to have coordinated Russo's care beginning no later than January 2001. In October 2010, in advance of Russo's administrative hearing, Dr. Brum prepared an evaluative report detailing Russo's physical impairments. (R. 364.) Citing the results of numerous tests, including two lumbar spine magnetic resonance images ("MRI") taken in 1993 and 2000,[2] a polysomnography taken in November 2004,[3] and a nerve conduction study performed in September 2010, Dr. Brum diagnosed Russo with L5-S1 radiculopathy, neuropathy, obesity, depression and sleep apnea. He noted that Russo presented with severe pain to the lumbar region radiating to the lower extremities with bilateral numbness. (R. 364-65.) Additionally, Dr. Brum recorded that Russo could not walk for more than 10 minutes or sleep more than 2 hours at a time, and experienced constant pain and weakness. (R. 365.) Finally, Dr. Brum opined that, in an eight hour workday, Russo could sit, stand, walk, and lie down for less than one hour, could not use his feet to operate foot controls, could bend and reach only occasionally, and could lift no more than 10 pounds. (R. 366-67.)

B.   *Treating Physician—Dr. Isaac Kreizman*

Isaac Kreizman, M.D. began treating Russo on September 1, 2010 and signed the nerve conduction study performed that day. (R. 360, 368.) Citing the same tests as Dr. Brum, Dr. Kreizman diagnosed Russo with lumbar radiculopathy

---

[2] A third lumbar spine MRI was taken on April 25, 2005. (R. 230.)
[3] A follow-up polysomnography was conducted later that month to evaluate the effectiveness of BiPAP on Russo's sleep-disordered breathing. (R. 234.)

and morbid obesity. (R. 360.) Further, he documented that EMG testing confirmed nerve damage, which he medically described as bilateral sensorimotor axonal polyneuropathy of the bilateral lower extremities and bilateral L4/L5 radiculopathy. (R. 361.) Like Dr. Brum, he concluded that, in an eight hour workday, Russo could sit, stand, walk, and lie down for less than one hour, could not use his feet to operate foot controls, could bend and reach only occasionally, and could lift no more than 10 pounds. (R. 362.)

C.  *Consulting Physician—Dr. Mahendra Misra*

At the request of the Division, Mahendra Misra, M.D. reviewed Russo's file and physically examined Russo on February 4, 2010. (R. 257, 277, 287, 290.) He diagnosed Russo with lumbosacral discogenic disease with radiculopathy, morbid obesity, depression, and noted that Russo could stand continuously for 15 minutes, sit continuously for 30 minutes to an hour, walk continuously for two blocks, and lift weight up to five to ten pounds. (R. 289-90.) Based on his observation and review, Dr. Misra opined that Russo "cannot do any active work at all." (R. 290.)

D.  *Consulting Psychologist—Dr. Dana Jackson, Psy. D.*

Dana Jackson, Psy. D examined Russo on January 29, 2010 in connection with his disability application. She diagnosed him with Depressive Disorder, not otherwise specified; Alcohol dependence, in full remission; Cocaine dependence, in full remission; and Obesity. She opined that Russo was able to interact with others in social situations; could cook, clean, shop for himself, and

socialize; and had average intellectual skills. (R. 284-85.)

E.  *Consulting Psychologist—Robert Lopez, Ph.D.*

At the request of the Division, Robert Lopez, Ph.D. reviewed Russo's case and conducted a consultative examination on February 4, 2010 to determine the severity of Russo's depression.[4] (R. 295-313.) In a report dated April 20, 2010, Dr. Lopez diagnosed Russo with Affective Disorders and Substance Addiction Disorders and concluded that, from a psychiatric standpoint, Russo was capable of following supervision, relating appropriately to coworkers, and performing substantial gainful activity. (R. 295, 305, 313.)

F.  *Additional Medical Records*

Dr. Stilwell and Dr. Bakshi's clinical notes document Russo's long pain management history, including his successes and failures with various pain medications and procedures. Dr. Bakshi's notes show that, at times, Russo's medication provided "some degree of relief," (R. 335), and that his "pain [had] decreased," (R. 340), or "[had] been improving,"(R. 345). However, his notes also reflect that, Russo continued to complain of "a significant amount of lower back pain,"(R. 340-44), and rated his pain a six out of 10, even while self-reporting improvements, (R. 347).

Similarly, Dr. Stilwell's medical records reflect that Russo experienced "good relief with pain medication," (R. 253), that his "pain [was] being treated

---

[4] Although Dr. Lopez's report indicates that an examination was performed, (R. 313), Russo claims in his papers that the consulting psychologist only reviewed his file, (Br. at 17).

6

well," (*e.g.*, R. 248), that he "does well with medication," (*e.g.*, R. 245), and that his "medications [were] controlling [his] pain well," (R.220). She also noted that, beginning in September 2007, Russo began expressing a desire to return to work and continued looking for work in 2008 and 2009.[5] (*e.g.*, R. 263, 288.) However, her notes also capture Russo's complaints about pain rating six on a scale of 10, (R. 248-54), his "back pain return[ing]," (R. 245), and the need for supplementary medication to address breakout pain, (R. 255).

## Discussion

When evaluating a determination by the Commissioner to deny a claimant disability insurance benefits, the Court may reverse the decision only if "there is a reasonable basis for doubt whether the ALJ applied correct legal principles," or if it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). SSA has promulgated a five-step sequential analysis that an ALJ must use to determine whether a claimant qualifies as disabled. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the ALJ must determine whether the claimant has a

---

[5] The clinical notes do not expand upon Russo's comments, leaving unanswered the question of whether Russo anticipated working at the same intensity he did in 2006 and early 2007, when he earned only $1719 and $135 respectively. (R. 28.) These earnings fell below the threshold of substantial gainful activity. (R.28.)

7

"severe" impairment that limits his work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii). Third, if such an impairment exists, the ALJ evaluates whether the impairment meets or equals the criteria of an impairment identified in the Commissioner's appendix of listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listed impairment, the ALJ must resolve whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work.[6] 20 C.F.R. § 404.1520(a)(4)(iv). This step requires that the ALJ first make an assessment of the claimant's RFC generally. 20 C.F.R. § 404.1520(e); id. § 404.1545. Fifth, if the claimant cannot perform his past work, the ALJ determines whether there is other work that the claimant could perform. 20 C.F.R. § 404.1520(a)(4)(v). In making such a determination, the ALJ must consider four factors: "'(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The claimant bears the burden of proof as to the first four steps. *See, e.g., Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998). If the claimant proves that his impairment prevents him from performing past relevant work, the burden shifts

---

[6] Under the regulations, "past relevant work" is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1).

to the Commissioner at the final step. *Id.* In the fifth step analysis, the Commissioner must show that the claimant retains the RFC to perform a certain category of work, such as light work or sedentary work, and that such work is available in the national economy. *Curry v. Apfel*, 209 F.3d 117, 122-23 (2d Cir. 2000). SSA regulations have subsequently limited the step five burden on the Commissioner, removing the requirement that the Commissioner show RFC, *see* 20 C.F.R. § 404.1560(c)(2), and these regulations "abrogated *Curry v. Apfel* at least in cases where the onset of disability was after the regulations were promulgated on August 26, 2003." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). The amendment, however, is immaterial. Russo's onset of disability preceded the promulgation of 20 C.F.R. § 404.1560(c)(2). Consequently, his case must be decided under the *Curry* standard.[7] *See, e.g., Cataneo v. Astrue*, 2013 WL 1122626 at *22-23 (E.D.N.Y. 2013); *Ramos v. Astrue*, 2010 WL 3325205, at *6 (E.D.N.Y. 2010).

After completing the fifth step, the ALJ concluded that Russo was not disabled and retained the RFC to perform sedentary work. In explaining his decision, the ALJ addressed Russo's statements, including his representations about pain, and the medical opinions of Russo's treating physicians. He dismissed the former as inconsistent with the objective medical evidence and afforded the latter "some, but not controlling weight," because they were "inconsistent with the

---

[7] The Second Circuit "decline[d] to reach the issue" of whether the 2003 regulations apply retroactively to cases, like Russo's, where the onset of disability predated the promulgation of 20 C.F.R. § 404.1560(c)(2). *See Poupore*, 566 F.3d at 306. Given that *Poupore* limited itself to cases with onsets of disability after August 26, 2003, *Curry* is still good law for cases with onsets before that date.

claimant's testimony and the objective medical evidence." (R. 32, 34.) Russo challenges both determinations. First, he argues that the ALJ misjudged his credibility and the extent of his pain by failing to adequately account for his use of pain medication. Second, Russo contends that the ALJ violated the treating physician rule by undervaluing Dr. Brum's medical opinion. The Court need not reach either argument. Different, and fatal, legal error, as prefaced above, is present.

Upon review of the entire record, it is clear that excerpts from the clinical notes submitted by Dr. Bakshi and Dr. Stilwell, in large part, formed the basis for the ALJ's decision to effectively discard Russo's testimony and discount the medical opinions of his treating doctors. (R. 32-34.) Yet the ALJ relied on this evidence without the benefit of context or medical insight, as he failed to acquire direct medical opinions or RFC assessments from either of the pain management specialists. Nor does the record show that the ALJ even called them to testify or otherwise supplement their unannotated clinical notes in an effort to establish their conclusions as to Russo's RFC. He chose to cut his own path through a jungle of clinical notes rather than call upon Russo's treating pain management specialists to crystalize their opinions for him. In so doing, the ALJ committed legal error.

The selective decision to elevate the findings of a treating physician without requesting an actual medical opinion or an RFC assessment from that same treating physician was prejudicial to Russo. *See Newsome v. Astrue*, 817 F. Supp. 2d 111, 139 (E.D.N.Y. 2011). "Thus, the ALJ had an affirmative duty, even if plaintiff

was represented by counsel, to develop the medical record and request that plaintiff's treating physicians assess plaintiff's functional capacity." *Dickson v. Astrue,* 2008 WL 4287389, at *13 (N.D.N.Y. 2008) ("In this case, the administrative transcript does not contain any statements from any of plaintiff's treating sources regarding how plaintiff's impairments affect her ability to perform work-related activities.... ); *see also Rosa v. Callahan,* 168 F.3d 72, 79–80 (2d Cir.1999) (holding that the ALJ should have asked the treating physician to supplement his findings with additional information where the record contained only "sparse notes" and conclusory statements and that the ALJ's failure "to request any additional records or support" from the treating physician resulted in "the ALJ [basing] her conclusions on incomplete information that was necessarily "conclusive of very little"). There is no evidence before the Court suggesting that the ALJ sought a medical opinion or RFC assessment from Dr. Bakshi. Nor does the record show that any effort was made to seek additional input from Dr. Stilwell once the centrality of her clinical notes became clear. Accordingly, the ALJ fell short of his affirmative obligation to develop the record. This error renders the record and the decision hollow. On this basis alone, remand is required. *See Robins v. Astrue,* 2011 WL 2446371 (E.D.N.Y. 2011).

## Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied, and Russo's cross-motion is granted to the extent that the

determination of the Commissioner is vacated, the decision of the ALJ reversed, and the matter remanded for further proceedings consistent with this Memorandum and Order.

        **SO ORDERED.**

Dated:    Brooklyn, New York
        May 30, 2013

        s/ ENV
**ERIC N. VITALIANO**
**United States District Judge**